UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAURICE BURGESS,

               Plaintiff,

     -v-

C. BANASIKE, JOHN DOE 1, OFFICER
K, OFFICER MCJURY, OFFICER
HAYS, JOHN DOE 2, JOHN DOE 3,
JOHN DOE 4, OFFICER FOSTER,
SERGEANT SORRELL, DSS D.
CLARY, OFFICER ROBERTS,
OFFICER REDDIEN, SEARGENT
RAPINI, OFFICER NORTON, ADS C.
LICATTA, OFFICER S., SGT.
HARTMAN,

           Defendant.

_____

**DECISION AND ORDER**

6:19-CV-06617 EAW

## <u>INTRODUCTION</u>

*Pro se* plaintiff Maurice Burgess ("Plaintiff" or "Burgess"), a former inmate at the Attica Correctional Facility in New York ("Attica"), filed this action seeking relief under 42 U.S.C. § 1983.  (Dkt. 1).  Following initial review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court determined that Plaintiff's retaliation and conditions of confinement claims against Defendants could proceed to service, but his remaining claims were to be dismissed with prejudice for failure to state a claim upon which relief may be granted if he failed to file an amended complaint supporting these claims.  (Dkt. 13).  Plaintiff did not file an amended complaint.

Currently before the Court is a motion to dismiss filed by defendants C. Banasike, DSS D. Clary, Sergeant Hartman, Officer Hays, Officer T. Kibler, ADS C. Licata, Officer McJury, Officer Norton, Sergeant Rapini, Officer Reddien, Officer Roberts, and Sergeant Sorrell (collectively, "Moving Defendants").  (Dkt. 22).  For the reasons discussed below, the motion to dismiss is granted in part and denied in part.

## DISCUSSION

### I.   Factual Background

The following facts are taken from Plaintiff's complaint.  (Dkt. 1).  As required on a motion to dismiss, the Court treats Plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor.

On April 17, 2017, Plaintiff received a copy of a federal civil rights suit filed against Correction Officer R. Pattinson ("CO Pattinson").  (*Id*. at 6).  Plaintiff did not file the lawsuit, and at the time, had no knowledge of it.  (*Id*.).  After an investigation into the lawsuit, prison officials determined Plaintiff was not involved.  (*Id.*).

In response to this perceived civil rights lawsuit against a correction officer, Plaintiff alleges that he suffered several acts of retaliation from an assortment of other correction officers.  On May 13, 2017, Defendant C. Banasike ("CO Banasike") ordered Plaintiff to give him his shirt while on the prison yard.  (*Id*.).  He then refused to give it back for the night, stating that he would take one of Plaintiff's shirts for each lawsuit or grievance he files.  (*Id*.).

On June 17, 2017, Defendant Sergeant Hartman ("Sgt. Hartman") removed Plaintiff from a prison family event because Plaintiff continued asking questions about why his

- 2 -

family could not attend.  (*Id*. at 7).  Sgt. Hartman moved Plaintiff to a Mental Health Unit, falsely telling the mental health clinician that Plaintiff was suicidal.  (*Id*.).  Sgt. Hartman proceeded to place Plaintiff in a cell covered in feces, stating as he left "how do you like filing lawsuits and grievances now?"  (*Id*. at 8).  Plaintiff asked to be removed from the cell after an unspecified period of time, and was placed in another cell for six days with no access to facilities to shower or brush his teeth.  (*Id*.).

That same day, while Plaintiff was in the Mental Health Unit, Defendant Officer T. Kibler ("CO Kibler") searched Plaintiff's cell and falsely reported finding gang-related materials.  (*Id*. at 9).  In response to this report, prison officials placed Plaintiff on "keeplock status" for 53 days.  (*Id*.).  An unidentified witness claims to have heard CO Kibler state that he set up Plaintiff in retaliation for his grievances and lawsuit.  (*Id*.).

On July 23, 2017, Defendant Officer McJury ("CO McJury") searched Plaintiff's cell.  (*Id*. at 10).  While doing so, CO McJury faked a conversation with Plaintiff, loudly implying he was an informant for prison officials.  (*Id*.).  Plaintiff generally alleges that this increases a prisoner's risk of being harmed in prison, but does not allege any particular increase in risk of harm or actual harm that he faced.

On April 23, 2018, Defendant Officer Hays ("CO Hays") searched Plaintiff's cell while he was receiving treatment for a medical emergency.  (*Id*. at 11).  CO Hays threw Plaintiff's personal effects all over Plaintiff's cell, stating out loud that it was in response to Plaintiff's grievances and lawsuit.  (*Id*.).  CO Hays also threw Plaintiff's personal pictures of friends and family into a bucket of water, destroying them.  (*Id*.).

On July 13, 2018, an unidentified Defendant stopped delivering Plaintiff his feed trays for an unspecified period of time, stating it was in response to his grievances and lawsuit. (*Id*. at 12).

On July 20, 2018, Defendant Officer Foster ("CO Foster") moved Plaintiff to a cell covered in feces for several hours while he destroyed or took Plaintiff's legal documents, clothes, sneakers, belts, a Walkman, cassette tapes, over 300 pictures of Plaintiff's friends and family, his Koran, and all of his religious headwear. (*Id*. at 13). CO Foster stated to Plaintiff prior to July 20 that Plaintiff was "the inmate that likes putting in lawsuits then complaining about what comes behind it." (*Id*.). Plaintiff complained about CO Foster's actions to Defendant Sergeant Sorrell ("Sgt. Sorrell"), who responded "well that's what you get when you write grievances against my officers. You can forget about your property too." (*Id*. at 14). Defendant Deputy Superintendent of Security D. Clary ("DSS Clary") authorized the disposal of Plaintiff's property under the false premise that Plaintiff was over his permitted property limit, but later admitted that he threw out the property "because of the grievances [he] had to answer." (*Id*.).

The same day, Defendants Officer Roberts ("CO Roberts"), Officer Reddien ("CO Reddien"), and Sergeant Rapini ("Sgt. Rapini") refused to provide Plaintiff with toilet paper for several hours and forced him to use a wash rag to wipe feces from himself. (*Id*. at 15). All three Defendants mockingly stated that Plaintiff could just use his grievances and lawsuit instead. (*Id*.).

On August 29, 2018, Defendant Officer Norton ("CO Norton") opened Plaintiff's mail, removed one of Plaintiff's complaints, read it out loud to other security guards, then

- 4 -

destroyed it.  (*Id*. at 16).  CO Reddien and Sgt. Rapini were present, and all three Defendants told Plaintiff "fuck your grievances."  (*Id*.).  When Plaintiff complained about this to Defendant Assistant Deputy Superintendent C. Licata ("ADS Licata"), she removed his visitation rights, stating "since you want to complain about my officers, I'm taking your visits."  (*Id*.).

Lastly, on September 12, 2019, an unidentified Officer "S" cut off water to Plaintiff's cell for an entire day, preventing Plaintiff from drinking or flushing the toilet. (*Id*. at 19).  On September 13, 2019, CO Reddien shut off his water as well, stating "[t]his is my house Burgess."  (*Id*. at 20).

## II.    Procedural Background

Plaintiff commenced the instant action on August 21, 2019.  (Dkt. 1).  On February 17, 2021, the Court issued an Order screening Plaintiff's complaint, and permitting ten claims for retaliation and three claims for conditions of confinement to go forward and granting Plaintiff leave to amend some of his remaining claims.  (Dkt. 13).  Plaintiff did not amend the complaint within the time frame set forth by the Court.  On December 23, 2021, Defendants filed the instant motion to dismiss.  (Dkt. 22).  The Court entered a Scheduling Order requiring responses to be filed by April 15, 2022.  (Dkt. 23).  Plaintiff did not file a response.

## DISCUSSION

### I.   Legal Standards

#### A.   Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen*

*v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations*," McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally."). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").

### B.    Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Andrews v. City of Rochester*, No. 21-CV-6764-FPG, 2022 WL 2356630, at *3 (W.D.N.Y. June 30, 2022). "Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

## II.    Moving Defendants' Motion to Dismiss

### A.    Retaliation Claims

It is axiomatic that prison officials may not retaliate against prisoners for exercising their constitutional rights. *Mt. Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977). To make out a § 1983 retaliation claim, a prisoner must show: (1) that he was engaged in constitutionally protected conduct; and (2) that the prison official's conduct was taken in retaliation for the prisoner's protected conduct. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where [courts] have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (quotation and citation omitted).

Moreover, courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners could potentially claim retaliation based on any decision they dislike. *Vazquez v. City of New York*, No. 1:21-CV-01573 (PAE)(VF), 2022 WL 2704763, at *13 (S.D.N.Y. June 17, 2022) ("A prisoner's claims of retaliation must be examined with particular care, however, because they are prone to abuse since prisoners can claim retaliation for every decision they dislike.") (quotation omitted), *adopted*, 2022 WL 2704469 (S.D.N.Y. July 11, 2022).  "Accordingly, even though [p]risoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right, courts must examine a prisoner's retaliation claim with skepticism and particular care." *Speaks v. Saeed*, No. 14-CV-06826 (JMA)(AYS), 2022 WL 541767, at *7 (E.D.N.Y. Feb. 23, 2022) (quotation and citation omitted).

Plaintiff alleges that the federal lawsuit filed against CO Pattinson and various other unspecified grievances[1] caused: (1) CO Banasike to take Plaintiff's shirt and leave him shirtless for a night; (2) Sgt. Hartman to unjustifiably place Plaintiff in a feces-covered cell for an unspecified time, followed by a clean observational cell for six days; (3) CO Kibler

---

[1]    Plaintiff does not specifically articulate each individual grievance he allegedly made to prison officials that caused retaliation, instead generally referencing several grievances throughout his complaint. (*See, e.g.*, Dkt. 1 at 7 ("Defendant John Doe 1 . . . retaliated against Plaintiff for his grievances and the federal civil rights lawsuit filed in his name . . . ."), 9 (same)).  Considering Plaintiff's *pro se* status, the Court will treat these allegations as sufficiently specific for the purpose of considering this motion to dismiss. *McEachin*, 357 F.3d at 200.  Moreover, the Court notes that after filing the initial complaint, Plaintiff filed additional matters which the Court previously construed as a supplement to the complaint (*see* Dkt. 13 at 1), and that supplement attaches various exhibits which appear to include grievances filed by Plaintiff (*see* Dkt. 11).

to search Plaintiff's cell and falsely report finding gang-related material resulting in 53 days of "keeplock" status; (4) CO McJury to fake a conversation in Plaintiff's cell implying he was an informant for prison officials; (5) CO Hays to throw Plaintiff's personal property around his cell and destroy pictures of his family and friends; (6) an unidentified Defendant to stop bringing food to Plaintiff's cell for an unspecified period of time; (7) Sgt. Sorrell, DSS Clary, and CO Foster to move Plaintiff to another feces-covered cell for several hours while they destroyed an array of Plaintiff's personal items; (8) COs Roberts and Reddien and Sgt. Rapini to deprive Plaintiff of toilet paper for several hours; (9) COs Norton and Reddien and Sgt. Rapini to open Plaintiff's mail and destroy a complaint regarding his treatment, and ADS Licata to take away Plaintiff's visitation rights for complaining about this; and (10) CO Reddien and an unidentified CO "S" to shut off Plaintiff's water for one day each.[2]

For the following reasons, the Court grants Moving Defendants' motion with respect to Plaintiff's fourth and eighth retaliation claims, and denies the motion with respect to the remaining retaliation claims.

### 1. First Retaliation Claim

Moving Defendants' motion is denied with respect to Plaintiff's first retaliation claim. Moving Defendants contend throughout their brief that Plaintiff did not partake in any protected activity because he did not actually file the federal lawsuit against CO Pattinson. (Dkt. 22-1 at 7). However, a plaintiff need not actually engage in protected

---

[2]      For purposes of this Decision and Order, the Court will use this numbering to reference each of Plaintiff's claims.

conduct to establish a § 1983 claim, so long as the prison official's reason for acting was to prevent protected conduct.  *See Heffernan v. City of Paterson*, 578 U.S. 266, 272-73 (2016) ("Here the employer mistakenly thought that the employee had engaged in protected speech. . . .  We conclude that . . . the government's reason for demoting Heffernan is what counts here.  When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. §1983—even if, as here, the employer makes a factual mistake about the employee's behavior.").

Furthermore, even if the lawsuit against CO Pattinson did not constitute protected conduct, Plaintiff repeatedly references various grievances that also allegedly caused retaliatory acts.  (*See, e.g.*, Dkt. 1 at 7 ("Defendant John Doe 1 . . . retaliated against Plaintiff for his grievances and the federal civil rights lawsuit filed in his name. . . ."), 9 (same)).  "[T]he filing of prison grievances is a constitutionally protected activity[.]" *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003).  Therefore, Plaintiff has adequately alleged that he partook in protected conduct to support a § 1983 retaliation claim.

Moving Defendants also argue, and again repeat throughout their brief, that there can be no causation between Plaintiff's protected conduct and Moving Defendants' alleged retaliatory actions because none of the Moving Defendants were named in the lawsuit mistakenly attributed to Plaintiff.  (*See, e.g.,* Dkt. 22-1 at 7).  However, this is not necessary to establish causation for a § 1983 retaliation claim.  While "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against other correctional

officers," "this general rule may not apply where there are indications of 'a retaliatory purpose—i.e., that the [officer's conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances.'" *Mack v. Wood*, No. 9:17-CV-1146(BKS/ATB), 2019 WL 5197230, at *6 (N.D.N.Y. July 26, 2019) (internal quotations omitted), *adopted*, 2019 WL 4183894 (N.D.N.Y. Sept. 4, 2019); *see also Moreau v. Ellsworth*, No. 9:20-CV-124 (DNH/ATB), 2021 WL 3813172, at *11 (N.D.N.Y. July 15, 2021) (holding that "while a plaintiff who 'alleges retaliatory adverse action by one officer for a grievance filed against another officer . . . faces a heightened burden of establishing a causal connection,' this does not necessarily bar a retaliation claim where there are indications of 'a retaliatory purpose'") (quoting *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338-39 (S.D.N.Y. 2015)), *adopted*, No. 9:20-CV-124, 2021 WL 3793772 (N.D.N.Y. Aug. 26, 2021). Direct indications of a retaliatory purpose include "statements by the defendant concerning his motivation." *Zaire v. Doe*, No. 9:03-CV-629, 2006 WL 1994848, at *5 (N.D.N.Y. July 13, 2006).

Here, for each claim enumerated in the complaint, Plaintiff alleges a statement by each Moving Defendant concerning their motivation. For his First Claim, Plaintiff states that "Banasike stated, 'for every grievance you file I'm going to take one of your shirts.'" (Dkt. 1 at 6). This allegation is sufficient to establish causation at the motion to dismiss stage.

Lastly, Moving Defendants claim that Plaintiff fails to allege CO Banasike took any adverse action, but this is not correct. Plaintiff alleges that CO Banasike took his shirt while he was in the prison yard and refused to give it back for an entire night. In other

words, CO Banasike allegedly required Plaintiff to both expose his body to other inmates and to expose himself to the elements without the benefit of clothing. The Court cannot say as a matter of law at the motion to dismiss stage that such action would not "deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (alteration and citation omitted). Accordingly, Plaintiff has alleged facts sufficient to support each element of his § 1983 retaliation claim against CO Banasike.

### 2. Second Retaliation Claim

Moving Defendants' motion is denied with respect to Plaintiff's second retaliation claim. Moving Defendants again argue that there is no causation because Sgt. Hartman was not named in the lawsuit mistakenly attributed to Plaintiff. As stated above, this argument lacks merit. *See supra* § II(A)(1). Plaintiff clearly alleges that Sgt. Hartman directly stated he was acting in retaliation for Plaintiff's perceived federal complaint and grievances. (Dkt. 1 at 8 ("As the Sergeant was leaving he stated, 'how do you like filing lawsuits and grievances now?'")). This is sufficient to establish causation at this stage of the proceedings. *See, e.g., Zaire*, 2006 WL 1994848, at *5.

Moving Defendants' argument that a one-time verbal statement cannot give rise to a constitutional violation (*see* Dkt. 22-1 at 8) is also misplaced. Moving Defendants argue that Sgt. Hartman's one-time statement regarding Plaintiff's lawsuits and grievances alone fails to establish any adverse action. However, Plaintiff alleges several other adverse actions by Sgt. Hartman. (*See* Dkt. 1 at 7-8 (alleging Sgt. Hartman filed a false mental health referral in order to remove Plaintiff from a family event, then placed him in a feces-

covered special housing unit cell before being moved to another cell for six days, where he

was unable to shower or brush his teeth)).

Moving Defendants also argue that Sgt. Hartman's one-time statement alone fails

to establish causation.  (Dkt. 22-1 at 8-9).  However, each case Moving Defendants rely on

found that various verbal statements were insufficient, alone, to establish an *adverse action*

under § 1983, not causation.  *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y.

2010); *Kemp v. LeClaire*, No. 03-CV-844S, 2007 WL 776416, at *7 (W.D.N.Y. Mar. 12,

2007); *Bartley v. Collins*, No. 95 CIV. 10161 (RJH), 2006 WL 1289256, at *7 (S.D.N.Y.

May 10, 2006); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005).  Moving

Defendants have cited no cases concluding that a direct statement of retaliatory purpose is

insufficient to establish causation at the motion to dismiss stage, nor has the Court

uncovered any such case in its own research.  For purposes of surviving a Rule 12(b)(6)

motion, Plaintiff has established causation through Sgt. Hartman's alleged statement

directly implicating a retaliatory motive.

Lastly, Moving Defendants' argument that Plaintiff's referral to a mental health

clinician fails to establish an adverse action is unsupported by the facts.  Plaintiff does not

allege that he was simply improperly referred to a mental health clinic; he alleges he was

forced into a feces-covered cell, then constrained to another cell for six days without

facilities to shower or brush his teeth.  These allegations are sufficient to establish an

adverse action at this stage of the proceedings.

### 3. Third Retaliation Claim

Moving Defendants' motion is denied with respect to Plaintiff's third retaliation claim. Moving Defendants again argue that there is no causation because CO Kibler was not named in the lawsuit mistakenly attributed to Plaintiff. This argument again lacks merit. *See supra* § II(A)(1). Plaintiff alleges that CO Kibler directly stated he was acting in retaliation for Plaintiff's perceived federal complaint and grievances. (Dkt. 1 at 9 ("At the Tier II Superintendent's Hearing, Plaintiff's witness testified that he overheard Officer K. telling another officer that he was going to 'set Burgess up.' Officer K. admittedly stated 'you guys with your grievances and lawsuits, ask your boy Burgess how I wrote him a misbehavior report for his lawsuits and grievances.'")). This is sufficient to establish causation at this stage of the proceedings.

Defendants also argue that the mere search of a cell, even if improper, does not constitute an adverse act for a § 1983 retaliation claim. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 527 (1984); *Lashley v. Wakefield*, 367 F. Supp. 2d 461, 470 (W.D.N.Y. 2005); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) ("It is well-settled . . . that plaintiff cannot base a retaliation claim . . . on a cell search."). However, Plaintiff does not merely claim that his cell was improperly searched. Plaintiff alleges that CO Kibler falsely reported finding gang-related material, resulting in 53 days of "keeplock" status for Plaintiff. This assertion sufficiently alleges an adverse action. *See Walker v. Keyser*, No. 98 CIV 5217 (DC), 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 2, 2001) (relied on by Moving Defendants for the assertion that cell searches are not adverse actions, but also recognizing that the alleged planting of items during a cell search can give rise to a § 1983 claim).

### 4.   Fourth Retaliation Claim

Moving Defendants' motion is granted with respect to Plaintiff's fourth retaliation claim.   An improper cell search, alone, does not constitute an adverse act in a § 1983 retaliation claim.   *See, e.g., Hudson*, 468 U.S. at 527; *Lashley*, 367 F. Supp. 2d at 470; *Bumpus*, 495 F. Supp. 2d at 327.   Accordingly, Plaintiff must allege some sort of adverse action in addition to the improper search.   While Plaintiff does claim that CO McJury faked a conversation in his cell, implying that Plaintiff was an informant, this does not constitute an adverse action when there is no allegation of a specific enhanced risk of harm or actual resulting harm.   *See James v. Mosko*, No. 13-CV-5-LJV-MJR, 2016 WL 8671478, at *6 (W.D.N.Y. July 22, 2016), *adopted*, 2017 WL 397474 (W.D.N.Y. Jan. 30, 2017) ("Calling Armand a 'rat' and discussing her civil cases does not meet [the adverse action] standard because Armand has not plausibly alleged that the comments risked inciting other inmates or prison employees to harm her, or that any individual did in fact injure her after having heard the comments."); *Snyder v. McGinnis*, No. 03-CV-0902E, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) (acknowledging generally that harm may result from being labeled an informant in prison, but dismissing § 1983 retaliation claim based on a lack of any actual harm).

Here, Plaintiff merely states that there is a general elevated risk of harm resulting from being labeled an informant in prison.   He does not articulate any facts indicating he specifically was put at an enhanced risk of harm, or that any actual harm resulted. Accordingly, Plaintiff has failed to allege any adverse action sufficient to sustain this § 1983 retaliation claim.

### 5.  Fifth Retaliation Claim

Moving Defendants' motion is denied with respect to Plaintiff's fifth retaliation claim.  Moving Defendants contend that Plaintiff has failed to allege more than a *de minimis* amount of his property was destroyed, and that he therefore fails to establish an adverse act for his retaliation claim.  *See Smith v. City of New York*, No. 03 CIV. 7576 (NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) ("*De minimis* acts of retaliation do not chill the exercise of constitutional rights, and thus are insufficient to support a First Amendment retaliation claim."); *Fann v. Arnold*, No. 14-CV-6187-FPG, 2016 WL 2858927, at *2 (W.D.N.Y. May 16, 2016) ("Plaintiff vaguely asserts that unnamed officers trashed his cell and claims that Sgt. Andrews ordered them to do so.  He states that all of his property was thrown in the shower, but he does not specify what exactly was destroyed. . . . Here, Plaintiff's allegation of property destruction constitutes a *de minimis* act of retaliation and is insufficient to support his retaliation claim.").

However, the destruction of Plaintiff's pictures of his family and friends cannot be determined to be *de minimis* on a motion to dismiss.  These pictures are intangible in value by nature, and their destruction is certainly more substantial than the personal property damage cited in Moving Defendants' brief.  *See Davis v. Jackson*, 15-CV-5359, 2018 WL 358089, at *11 (S.D.N.Y. Jan. 8, 2018) (one-time taking of an inmate's belt dismissed as *de minimis*); *Fann*, 2016 WL 2858927, at *2 (claims are *de minimis* when there is no allegation of any property being permanently destroyed).  Accordingly, Plaintiff has pleaded sufficiently significant destroyed property to avoid dismissal at this stage of the proceedings.

### 6.   Sixth Retaliation Claim

Moving Defendants' motion is denied with respect to Plaintiff's sixth retaliation claim.  Moving Defendants do not appear to assert any grounds in their brief for dismissing Plaintiff's claim that an unidentified CO ceased bringing Plaintiff food, and the Court has already determined in its prior Order that this claim was sufficiently pled to avoid *sua sponte* dismissal.  Accordingly, there is no basis for dismissal of this claim on the instant record.

### 7.   Seventh Retaliation Claim

Moving Defendants' motion is denied with respect to Plaintiff's seventh retaliation claim.   Moving Defendants do not address Plaintiff's allegations against CO Foster. Moving Defendants do argue, again, that there is no causation with respect to the claims against Sgt. Sorrell and DSS Clary because they were not named in the lawsuit mistakenly attributed to Plaintiff.  This argument is baseless.  *See supra* § II(A)(1).  Plaintiff alleges that Sgt. Sorrell and DSS Clary directly stated that they were acting in retaliation for Plaintiff's perceived federal complaint and grievances.  (Dkt. 1 at 14 ("Plaintiff complained to Defendant Sergeant Sorrell about the feces in his cell and the Sergeant responded, 'well that's what you get when you write grievances against my officers.  You can forget about your property too.'   Defendant D, Clary, Deputy Superintendent of Security ('DSS') authorized the disposal of Plaintiff's property . . . later admitting he 'threw the property out because of the grievances I had to answer.'"))  This is sufficient to establish causation at this stage of the proceedings.

Moving Defendants also again argue that one-time verbal statements cannot give rise to a constitutional violation. As discussed above, these arguments are misplaced. *See supra* § II(A)(2). Plaintiff has alleged several adverse actions beyond mere words, including that he was moved to a feces-covered cell for several hours, during which time CO Foster destroyed Plaintiff's legal documents, clothes, cassettes, a Walkman, pictures of his family and friends, and religious material. He alleges DSS Clary facilitated CO Foster's actions and that Sgt. Sorrell was involved with the plan as well, demonstrated by his knowledge that Plaintiff would be unable to recover any of his seized property. For a *pro se* litigant, these allegations are sufficiently specific to withstand a motion to dismiss. *McEachin*, 357 F.3d at 200.

Further, Moving Defendants' assertion that the destruction of this property was a *de minimis* adverse action fails. This ignores the non-property-destruction-based portion of Plaintiff's claim regarding his confinement to a feces-covered cell for several hours. It also ignores case law Moving Defendants themselves rely upon, stating that destroying legal documents is not a *de minimis* adverse action. *See Smith*, 2005 WL 1026551, at *3 ("In addition, the retaliatory conduct alleged here involves more than just the destruction of personal property. Instead, the conduct appears designed specifically to deter plaintiff's exercise of his constitutional rights through the destruction of his legal papers. Accordingly, we find that plaintiff has established an adverse action substantial enough to satisfy the second prong of the retaliation test.").

Lastly, Moving Defendants claim that too much time has passed between the alleged protected conduct and Moving Defendants' retaliatory acts to find causation. As discussed

above, Moving Defendants' own alleged statements concerning their respective motivations provide direct evidence of causation. *See Zaire,* 2006 WL 1994848, at *5. Therefore, Plaintiff does not need to rely on temporal proximity to imply causation. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (describing temporal proximity as a permissive way to establish causation, not a distinct requirement). Accordingly, Moving Defendants' motion to dismiss this claim is denied.

### 8. Eighth Retaliation Claim

Moving Defendants' motion is granted with respect to Plaintiff's eighth retaliation claim. Plaintiff's allegation that COs Roberts and Reddien and Sgt. Rapini only gave Plaintiff a wash rag instead of toilet paper for several hours is not sufficient to plausibly allege adverse action.

Brief deprivations of toilet paper or access to a bathroom are not adverse actions in a § 1983 retaliation claim. *See Myers v. Saxton,* No. 9:20-CV-0465 BKS DJS, 2021 WL 149062, at *7 (N.D.N.Y. Jan. 15, 2021) ("[D]efendant Collins allegedly stared at plaintiff and refused to respond to his request for a roll of toilet paper . . . . Vague and isolated incidents of intimidation or threats, like staring at plaintiff when he requested toilet paper, do not rise to the level of adverse action."); *Mateo v. Alexander*, No. 10 CIV. 8427 LAP DCF, 2012 WL 864805, at *5 (S.D.N.Y. Mar. 14, 2012) (denial of access to a bathroom for an hour on two separate occasions did not rise to the level of adverse action for purposes of retaliation claim). Here, Plaintiff does not even allege that he was denied access to a bathroom, but only that on a single occasion he had to use a wash rag to clean himself rather than toilet paper. Additionally, Plaintiff fails to allege any facts indicting Sgt.

Rappini acted with a retaliatory motive on this occasion, only referencing two statements made by COs Reddien and Roberts.  For these reasons, Plaintiff's eighth claim is dismissed.

### 9.  Ninth Retaliation Claim

Moving Defendants' motion is denied with respect to Plaintiff's ninth retaliation claim.  Moving Defendants' argument that there is no causation because COs Norton and Reddien, Sgt. Rapini, and ADS Licata are not named in the lawsuit mistakenly attributed to Plaintiff is baseless.  *See supra* § II(A)(1).  Plaintiff alleges that each of these defendants directly stated that they were acting in retaliation for Plaintiff's perceived federal complaint and grievances.  (Dkt. 1 at 16 ("Defendant Officer Norton took Plaintiff's mail without the mail box, opened one of his complaints, read it out loud and then destroyed it. . . .  Officer Norton then approached Plaintiff with Officer Reddien and Sergeant Rapini and stated 'fuck your grievances.'  Officer Reddien and Sergeant Rapini both chimed in and said as the same time 'yeah Fuck your grievances.'  When Plaintiff complaint to ADS C. Licata . . . Licata stated that 'since you want to complain to me about my officers, I'm taking your visits.'")).  These statements are sufficient to establish causation at this stage of the proceedings.  Further, for purposes of assessing a *pro se* complaint, Plaintiff describes each of the involved defendants' roles in the destruction of his complaint with sufficient specificity to withstand a motion to dismiss.  *See McEachin*, 357 F.3d at 200.

Moving Defendants' argument that the one-time opening of an inmate's mail does not qualify as an adverse act (*see* Dkt. 22-1 at 19-20) is inapposite.  Plaintiff is not alleging that his mail was merely opened, but that it was opened in order to destroy one of his complaints.  As discussed above, the destruction of legal documents is not a *de minimis*

injury.  *Smith*, 2005 WL 1026551, at *3.  Accordingly, the alleged actions of COs Norton and Reddien and Sgt. Rapini are sufficiently adverse to survive a motion to dismiss.

Regarding ADS Licata, Plaintiff's allegations are not merely conclusory as Moving Defendants suggest.  Plaintiff identifies a specific Tier III Hearing at which ADS Licata expressly articulated a retaliatory motive before taking Plaintiff's visitation rights.  Further, in light of this direct evidence of a retaliatory motive, Plaintiff is not required to meet a temporal proximity test.  *See supra* § II(A)(7).  Accordingly, Plaintiff has adequately pled a claim against each of these four Moving Defendants.

### 10.  Tenth Retaliation Claim

Moving Defendants' motion is denied with respect to Plaintiff's tenth retaliation claim.  Defendants argue that Plaintiff was not an inmate at Attica on the asserted dates COs "S" and Reddien turned off his cell's water.  Defendants rely on Dkt. 22-1, Ex. A ("Exhibit A"), which indicates Plaintiff was being housed at Great Meadow Correctional Facility from January 7, 2019, to September 20, 2019.  However, the Court will not consider Exhibit A on this Motion to Dismiss.

"Ordinarily, a court may not look beyond the four corners of the complaint in considering a motion to dismiss."  *Rath v. Pitcher*, No. 12-CV-6543L, 2014 WL 1315413, at *1 (W.D.N.Y. Mar. 28, 2014) (citing *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000)).  Moving Defendants have relied on outside evidence in seeking dismissal of Plaintiff's tenth claim, but they have neither moved alternatively for summary judgment, nor properly requested conversion of their motion to dismiss.  *See Gross v. Hanover Ins. Co., No.* 91 CIV. 0079 (PKL), 1991 WL 102401, at *3 (S.D.N.Y. June 5, 1991) (collecting

cases declining to consider extrinsic evidence on motion to dismiss with no alternative request for summary judgment); *Klyczek v. Shannon*, No. 1:15-CV-0963 (GTS), 2016 WL 7012650, at *7 (W.D.N.Y. Dec. 1, 2016) ("[T]he Court notes that Defendant's request for 'conversion' is either inarticulate or nonsensical.  This is because, when read in their entirety, Defendant's motion papers do not request that the Court convert her motion to dismiss to one for summary judgment pursuant to Fed. R. Civ. P. 12(d).").

Further, there has been no showing that Exhibit A is integral to the complaint or may be judicially noticed.  *See Martin v. Mattie*, No. 9:19-CV-0536 TJM CFH, 2020 WL 974525, at *1 (N.D.N.Y. Jan. 30, 2020), *adopted*, 2020 WL 972436 (N.D.N.Y. Feb. 28, 2020).  The Court therefore declines to consider Exhibit A on this motion to dismiss.  *See Klyczek*, 2016 WL 7012650, at *7 (Denying alternative summary judgment motion based on extrinsic evidence where "Plaintiffs [had] not had an adequate opportunity to conduct discovery.").  Without consideration of this evidence, there is no basis for dismissal of Plaintiff's tenth retaliation claim.

## B.    Conditions of Confinement Claims

In its Order dated February 17, 2021, the Court found that Plaintiff's second, seventh, and tenth claims alleged potential violations of Plaintiff's Eighth Amendment right against cruel and unusual punishment.  (Dkt. 13 at 11-12).  For the following reasons, Moving Defendants' motion to dismiss is denied with respect to these three claims insofar as they assert Eighth Amendment violations.

To state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the

"minimal civilized measure of life's necessities"; and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991). "At the motion to dismiss stage, the Court must determine whether the plaintiff's allegations lead to the plausible inference that the plaintiff was deprived of [his] basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety or was exposed to conditions that pose[d] an unreasonable risk of serious damage to [his] future health." *Edwards v. Gutwein*, No. 21-CV-03183 (PMH), 2022 WL 1093558, at *7 (S.D.N.Y. Apr. 7, 2022) (internal quotations and citation omitted). The second subjective element requires that in denying humane conditions of confinement, the official must have been aware of and disregarded a substantial and excessive risk to the inmate's health or safety. *Id*.

Moving Defendants' argument that claims two, seven, and ten allege "merely unpleasant or annoying" conditions (Dkt. 22-1 at 23) is unsupported by the facts. Each claim alleges more than the mere brief exposure to a feces-smeared cell, differentiating it from the authority relied on by Moving Defendants. The second claim alleges Plaintiff was exposed to a feces-smeared cell, then confined to another cell for six days without the capability to wash any waste off of him. The seventh claim alleges Plaintiff was exposed to a feces-covered cell for several hours and forced to clean it. While this appears less severe than the allegations in the second claim, considering Plaintiff's *pro se* status, these alleged facts are sufficiently severe to survive dismissal as well. *See generally Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015) ("[W]hether exposure to human waste is cruel and unusual depends on both the duration and the severity of the exposure. . . . The severity

of an exposure may be less quantifiable than its duration, but its qualitative offense to a prisoner's dignity should be given due consideration.").

And lastly, Moving Defendants do not appear to address the tenth claim, alleging Plaintiff was deprived of water for two days. Accordingly, this facially adequate claim withstands Moving Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 22) is granted with respect to Plaintiff's fourth and eighth retaliation claims. These claims are dismissed without prejudice. *See Amankwaah v. Cayuga Cnty.*, No. 92-CV-1103, 1992 WL 296459, at *4 (N.D.N.Y. Oct. 16, 1992) ("The Second Circuit has instructed that in cases such as the present, in which a complaint is defective because the *pro se* plaintiff did not satisfy particular pleading requirements, the district court should dismiss the complaint without prejudice[.]"). Moving Defendants' motion to dismiss is denied in all other respects.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: October 24, 2022
       Rochester, New York